IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF ALABAMA

RECEIVED
2008 FEB 25 A 10: 04
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES OF AMERICA
PLAINTIFF,

vs

CASE NO: 3:08CV133-F

SAWELIJA TYREE FLOYD
DEFENDANT

---

**MEMORANDUM OF LAW IN SUPPORT**

---

**The Fourth Amendment's Plain Language**

The Fourth Amendment essentially (1) provides that particularized warrants shall be issued only upon probable cause supported by oath or affirmation, and (2) protects against unreasonable searches and seizures. The amendment does not say that searches and seizures must be preceded by

19

a warrant. Nor does it provide that all searches and seizures require probable cause. The Fourth Amendment dictates that people and their effects, etc., are secure only as against unreasonable searches and seizures, though the term "unreasonable" is not defined in the amendment.

## Warrant Requirement

Ordinarily a search or seizure is not lawful unless preceded by a warrant issued by a neutral and detached magistrate, except in very specific and well-delineated exceptions. The Warrant Requirement of the Fourth Amendment, also known as the Warrant Clause, requires warrants to be issued upon probable cause. The Warrant Clause of the Fourth Amendment does not require warrants to be issued in all searches and seizures and courts have held that searches and seizures are unreasonable unless executed pursuant to a warrant or well-established exception. See Johnson v. United States, 333 U.S. 10, 14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369 (1948). There are numerous well-established exceptions including exigent circumstances Searches and Seizures.

A search is legally defined as an invasion of an individual's legitimate expectation of privacy. See Katz v. United States, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). This requires that an individual have a subjective expectation of privacy and that the expectation be an objectively reasonable one, meaning one that society is prepared to accept as reasonable contraband is left in plain view, abandoned in an alley or voluntarily given to a police officer, there is no reasonable expectation of privacy and hence no Fourth Amendment search.

There are two different types of seizures: seizures of people and seizures of property. "[T]he Fourth Amendment protects people, not places." Katz, 389 U.S. at 351, 19 L. Ed. 2d at 582, 88 S. Ct. at 511. The seizure of a person is determined by an objective standard that asks the question whether the person stopped by government officials reasonably believes he or she is "free to leave." See Michigan v. Chesternut, 486 U.S. 567, 100 L. Ed. 2d 565, 108 S. Ct. 1975 (1988). This may happen with or without formal arrest. Seizure of property occurs when a government official meaningfully interferes with a person's possessory interest in that property. See United States v. Jacobsen,

21

466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). In plain English, it is a seizure of property when the police take the bag, impound the car, or voucher the purse.

### Probable Cause

Probable cause is a level of suspicion necessary to obtain a warrant or affect an arrest. Probable cause is generally required in order for the search or seizure to be reasonable. Probable cause for a warrant requires a finding of a "*fair probability*" that contraband or evidence will be found in a particular place, and probable cause for an arrest requires a finding that an offense has been committed or is being committed. See Illinois v. Gates, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983); Beck v. Ohio, 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). Probable cause is determined by a "totality of the circumstances" analysis, and is reviewed de novo by the appellate court, giving deference to the historical facts as found by the reviewing judge. See Ornelas v. United States, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996)

## The Exclusionary Rule

The concept of standing is closely tied to the exclusionary rule that surrounds and often dictates Fourth Amendment jurisprudence. The sanction for violating the Fourth Amendment is the exclusion of the evidence from use at trial. See Weeks v. United States, 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914). The evidence subject to exclusion includes not only any direct evidence, but also evidence obtained through the exploitation of the conduct that violated the Fourth Amendment, known as the "fruit of the poisonous tree." See id. It is important to remember that even though this remedy is trial related, a Fourth Amendment violation is "fully accomplished" at the time the unreasonable act is committed. See United States v. Calandra, 414 U.S. 338, 354, 38 L. Ed. 2d 561, 575, 94 S. Ct. 613, 623 (1974). In other words, the Fourth Amendment prohibits "unreasonable searches and seizures" regardless of whether the evidence is ultimately used at trial. In practice, the effect of that violation does not come to the attention of criminal courts until and unless defense counsel files a motion to suppress the evidence seized in violation of the amendment.

23

Warrant less search must be strictly circumscribed by exigencies which justify its initiation; warrants are generally required to search person's home or his person unless exigencies of situation make needs of law enforcement so compelling that warrant less search is objectively reasonable under Fourth Amendment; seriousness of offense under investigation does not itself create exigent circumstances of kind that under Fourth Amendment will justify warrant less search. Mincey v Arizona (1978) 437 US 385, 57 L Ed 2d 290, 98 S Ct 2408
United States, 115 US App DC 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v Tyler, supra, at 509-510, 56 L Ed 2d 486 98 S Ct 1942; Coolidge v New Hampshire, 403 US, at 465-466, 29 L Ed 2d 564, 91 S Ct 2022. But the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law. See United States v Chadwick, 433 US 1, 6-

24

11, 53 L Ed 2d 538, 97 S Ct 2476. For this reason, warrants are [437 US 394], generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrant less search is objectively reasonable under the Fourth Amendment. McDonald v United States, 335 US 451, 456, 93 L Ed 153, 69 S Ct 191; Johnson v United States, 333 US 10, 14-15, 92 L Ed 436, 68 S Ct 367. See, e.g., **Chimel v California, supra (search of arrested suspect and area within his control for weapons or evidence)**; Warden **v** Hayden, 387 US 294, 298-300, 18 L Ed 2d 782, 87 S Ct 1642 ("hot pursuit" of fleeing suspect); Schmerber v California, 384 US 757, 770-771, 16 L Ed 2d 908, 86 S Ct 1826 (imminent destruction of evidence); see also supra, at 392-393, 57 L Ed 2d, at 299-300. Holding of Payton v New York (1980) 445 US 573, 63 L Ed 2d 639, 100 S Ct 1371, on remand 51 NY2d 169, 433 NYS2d 61, 412 NE2d 1288 and (not followed United States v Underwood (CA9 Cal) 693 F.2d 1306, op withdrawn (CA9) 704 F.2d 1059), which prohibits police from making warrant less and nonconsensual entry into suspect's home in order to make routine felony arrest, does not apply to warrant less

25

entries justified by exigent circumstances displayed in particular factual situations. Gilbert v Commonwealth (1982, Ky) 637 SW2d 632, cert den (1983) 459 US 1149, 74 L Ed 2d 998, 103 S Ct 794

The affidavit does not state facts tending to establish the commission of the offense and the guilt of the defendant, as required by § 15-7-2(b), Code of Alabama 1975 . Both the Fourth Amendment of the United States Constitution and Article One, Section Five, of the Alabama Constitution require oath or affirmation establishing probable cause to arrest. Malone v. State, 282 So. 2d 367, 51 Ala. App. 19, cert. quashed, 282 So. 2d 371, 291 Ala. 789 (19), describes these constitutional requirements as "unyielding demands." It is the law of the land that a confession obtained through custodial interrogation after an illegal arrest is due to be excluded from evidence unless there are intervening events which break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint. Taylor v. Alabama, 457 U.S. 687, 102 S. Ct. 2664, 73 L. Ed. 2d 314 (19). In the instant case the{476 So. 2d 632} confession occurred sooner after the arrest

than in Taylor, supra.

It was thought from early reports that United States v. Leon would make a retrial of this case unnecessary. However, the United States Supreme Court in its opinion footnoted this observation:

"Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a '**bare bones**' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. See Whiteley v. Warden, 401 U.S. 560, 568, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971)."

The court in the body of the opinion went on to explain:

"...Nor would an officer manifest objective good faith in relying on an affidavit '**so lacking in indicia of probable cause** as to render official belief in its existence entirely unreasonable.' Brown v. Illinois, 422 U.S. at 610-611."

ur earlier cases illustrate the limits beyond which a   gistrate may not venture in issuing a warrant. A sworn     tement of an affiant that "he has cause to suspect and       believe" that liquor illegally brought into the United       es is located on certain premises will not do.

27

Nathanson v. United States, 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933).

An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in Nathanson failed to meet this requirement.

An officer's statement that "affiants have received reliable information from a credible person and do believe" that heroin is stored in a home, is likewise inadequate. Aguilar v. Texas, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). As in Nathanson, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause.

Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, {476 So. 2d 634} courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

28

[Emphasis added.]

It is clear that this is the "bare-bones" type affidavit that the United States Supreme Court said in Gates would be inadequate. Alabama courts also recognize that affidavits, like the one in the present action, which consist solely of the affiant's conclusion that the named individual committed an offense, without setting forth the facts upon which the conclusion is based, are fatally defective. Malone v. State, 51 Ala. App. 19, 282 So. 2d 367, writ quashed, 291 Ala. 789, 282 So. 2d 371 (1973).

In Leon, the Supreme Court, addressing the argument concerning the policy of deference to a magistrate's probable-cause determination, stated:

Reviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." Illinois v. Gates, supra, 462 U.S. at , 103 S. Ct., at 2332. . . .U.S. at, 104 S. Ct. at 3417. The Court followed this discussion with a footnote pertaining to the application of the "good faith" exception to such a case, stating in pertinent part:

Although the Court was willing to assume [in Beck v. Ohio,

29

379 U.S. 89, [13 L. Ed. 2d 142, 85 S. Ct. 223] (1964)] that the arresting officers acted in good faith, it concluded that "'good faith on the part of the arresting officers is not enough.' Henry v. United States, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." [ Beck v. Ohio, 379 U.S. 89, at 97, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964).]

We adhere to this view and emphasize that nothing in this opinion is intended {476 So. 2d 635} to suggest a lowering of the probable-cause standard. On the contrary, we deal here only with the remedy to be applied to a concededly unconstitutional search.

U.S. at, 104 S. Ct. at 3417. Attempting to clarify the case in which the newly adopted exception would apply, the Court continued:

The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920

30

(1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Brown v. Illinois, 422 U.S. at 610-611, 95 S. Ct., at 2265-2266 (POWELL, J., concurring in part); see Illinois v. Gates, supra, 462 U.S., at , 103 S. Ct., at (WHITE, J., concurring in the judgment). Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid. Cf. Massachusetts v. Sheppard, U.S., at, 104 S. Ct., at .

U.S. at, 104 S. Ct. at 3422. The Court concluded by saying: In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. Only respondent Leon had contended that no

31

reasonably well-trained police officer could have believed that there existed probable cause to search his house. quoted from Ex parte STATE of Alabama ( Re Robert Lee CRITTENDEN , Bean Crittenden v. STATE of Alabama) 84-494. 476 So. 2d 632 ( Ala. 1985 )U.S. at, 104 S. Ct. at 3417. Attempting to clarify the cases in which the newly adopted exception would apply, the Court continued: The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Brown v. Illinois, 422 U.S. at 610-611, 95 S. Ct., at 2265-2266 (POWELL, J., concurring in part); see Illinois v. Gates, supra, 462 U.S., at , 103 S. Ct., at  (WHITE, J., concurring in the judgment). In the absence of an allegation that the magistrate abandoned his detached and neutral role,

32

suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. Only respondent Leon had contended that no reasonably well-trained police officer could have believed that there existed probable cause to search his house; significantly, the other respondents advance no comparable argument. Officer Rombach's application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.

Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate. U.S., 104 S. Ct. at 3423. The Court in Leon states that the affidavit at issue was clearly not a "bare-bones "affidavit, and suggests that if it were, the outcome would be different.

33

We are of the opinion that the United States Supreme Court did not wish to extend the "good faith" exception in Leon to a case such as the one before us.

Submitted By

*Sawelija Tyree Floyd*
Sawelija Tyree Floyd

34

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
OF ALABAMA


UNITED STATES OF AMERICA
PLAINTIFF,


vs                                                            CASE NO:_____


SAWELIJA TYREE FLOYD
DEFENDANT.

---

DEFENDANT'S SUPPORTING FACTS FOR GROUNDS
TWO, THREE, AND FOUR

---

The defendant asserts that after he was illegally arrested, the initial probable cause

of why the police were at his residence had ended.

Auburn Police alleged that upon arresting the movant Floyd, they smelled burning

marijuana coming from the residence.

That this gave them a renewed probable cause, which they say permitted them to the

35

right to "secure the residence and to obviously keep any evidence from being destroyed or anything like that (SUP.TR.12;18)

It was then after when Ms McCray after being ordered to show the police were she had a firearm stored, while she had already been arrested and read her Miranda rights, that now police gained " plain view " of the alleged illegal drugs in a another separate room of the house. Once police saw what may have been some illegal drugs, officer Murray went to a county Magistrate in order to get a search warrant.

The police did not have any probable cause to seize the alleged drugs, which were in the kitchen area, and not in plain view until Officers escorted Ms. McCray to another room of the home in order to retrieve a weapon under the ruse of a search incident to arrest.

Submitted By

*Sawelya Tyree Floyd*
Sawelya Tyree Floyd